In the Matter of MARK HENRY SCHNEIDER, an Attorney, Respondent.

First Department, July 15, 1932.

*Einar Chrystie,* for the petitioner.

*C. E. Sutherland,* for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court, Second Department, on the 15th day of December, 1919.

In the petition herein he is charged with misconduct as an attorney at law substantially as follows: That while acting as a trustee in bankruptcy in the matter of Joseph and Dora Schwartz, trading as Schwartz Bakery, bankrupts, the respondent neglected and refused to obey the orders of the court and the referee in bankruptcy; he signed and filed with the referee a report as trustee in which he falsely stated that he had " opened an account in the

name of Schwartz Bakery with the State Bank, Brownsville, in the total sum of $217.20." It is alleged that the respondent, instead, had received as trustee the sum of $217.20 and converted the same to his own use, and had failed to account for or to pay over any part thereof until after a proceeding had been instituted against him in the United States District Court for the Southern District of New York, in which he was found guilty of contempt of court by reason of his failure so to do.

The respondent answered, denying the conversion, and alleging that the money received by him as trustee had been kept intact in a safe deposit vault of his father-in-law. The respondent further alleged that the failure to comply with the orders of the Bankruptcy Court was in large measure due to the neglect of attorneys upon whom he relied to act for him in the matter; further alleging that the report filed with the referee containing the statement that the respondent had opened an account, was not intended to be a trustee's report, and that at the time of giving said statement to the referee the latter was advised that no bank account had been opened.

The matter was referred to an official referee to take testimony in regard to the charges and to report the same with his opinion thereon to this court. Full hearing was had before the referee, and the testimony completed. The referee died, however, before making his report.

The petitioner now moves that this court take such action upon the record as it may deem just and proper.

The record fully discloses the entire situation out of which these charges arose. The respondent has been afforded the opportunity of presenting to this court additional memoranda in support of his contentions before the referee.

Upon this record we find the charges sustained by the evidence.

It appears that on or about October 15, 1924, the respondent was elected trustee in bankruptcy as aforesaid. On or about December 24, 1925, he received as trustee a check for $100 in settlement of an action brought by him against Dora Schwartz, and on or about July 21, 1926, he received from Charles G. Bond, who had acted as receiver in the aforesaid bankruptcy proceeding, a check for $117.20. Both of these checks the respondent deposited in his personal bank account. Thereafter the referee in bankruptcy repeatedly requested the respondent to file his report as trustee, communicating many times by telephone and writing six letters to the respondent between September 2, 1926, and December 3, 1926. On January 17, 1927, the respondent filed a report which contained the statement that the respondent had "opened an account in the name of Schwartz Bakery with the State Bank, Brownsville, in the total sum of $217.20."

This report subsequently was confirmed and a dividend declared. Thereafter the referee in bankruptcy made numerous requests of the respondent that he prepare checks to pay the dividends, without result. The referee finally instituted a proceeding to punish the respondent for contempt. After hearing the parties, an order was entered finding the respondent guilty of contempt of court in having willfully and deliberately disobeyed the lawful orders of the court and referee in the bankruptcy proceeding; in willfully and deliberately filing a false report as trustee therein; in misappropriating the funds of the bankrupt estate. The order directs that the respondent be committed and imprisoned until he shall pay to the clerk of the court the sum of $217.20, collected by him as trustee in bankruptcy. The respondent was thereafter taken into custody by a marshal and remained in custody until later in the day when he paid over to the clerk of the court the sum of $217.20.

The respondent, before the referee, testified that he had attempted to open a trustee's account upon receiving the first check of $100, but was informed that no account would be accepted in an amount less than $200, wherefore he deposited the check in a personal account, subsequently withdrawing $100 in cash and giving it to his father-in-law to keep for him in his safe deposit box. The respondent, upon receiving the second check for $117.20, likewise deposited it in his personal account. He testified that he subsequently withdrew from his account this amount in cash, and gave it to his father-in-law to deposit in his vault with the amount previously deposited. It is to be noted that with the receipt by the respondent of the second check, the reason given for not opening a trustee's account had ceased, as respondent then had, as trustee, upwards of $200.

The respondent, in attempted corroboration of his testimony, offered testimony of his clerk and of his father-in-law. The testimony of these witnesses in regard to the manner of procuring and deposit in the safe deposit box of the aforesaid amounts, is in such irreconcilable conflict as to demonstrate the falsity of the testimony. Additional proof of such falsity is found in the testimony of a representative of the State Bank, where the father-in-law of the respondent had his safe deposit box, and the slips which the bank required depositors to sign upon visiting the vaults. These failed to show any visits to the vaults by the father-in-law of the respondent during the period in which he claimed to have deposited the money. As further showing the falsity of the testimony of the respondent, he testified before Judge Moscowitz that he had taken from his vault and deposited in the Schwartz trustee account the

sum of $217.20. Upon the hearing in this proceeding he testified, with reference to the same matter, as follows: " Q. Was this money that you deposited there the same money that you had left with your father-in-law? A. No, it was not the same money, because I could not get my father-in-law at that time, you see, and I wanted to get rid of this matter myself without the aid of the attorneys. I couldn't get them, so I put my own account in; * * * but then I could not get my vault key at that time, because neither the wife nor the father-in-law was in the city and I just took my own money and put it in until I get rid of this affair."

The facts are that the respondent did not take money from a vault for the purpose of opening a trustee's account as he testified before Judge Moscowitz; he did not open said account with his own money on September 22, 1927, and his father-in-law was not absent from town on that day, as testified by him in this proceeding. The respondent opened said account with the personal check of his father-in-law drawn to the order of the respondent dated the very day the father-in-law was said to have been absent.

The falsity of the statement in the report filed by the respondent with the referee in bankruptcy on January 17, 1927, also is apparent, since it was not until September 22, 1927, that such an account was in fact opened. The respondent attempts to avoid the effect of this false statement by the contention that the statement was unsworn and was not intended to constitute a report. This latter claim is contradicted by all the facts and circumstances, by the testimony of the referee in bankruptcy and by that of the respondent himself before Judge Moscowitz, where he testified: " Q. You made a sworn statement 'opened an account in the name of Schwartz Bakery, in the State Bank, Brownsville Branch, total sum $217.' Did you sign that? A. Yes. Q. You know what was in it? A. Yes. Q. That was false, wasn't it? A. No; erroneous, if you please. False would be if I did not have the money for that money."

Not only does the record upon this petition conclusively establish the guilt of respondent, but it also shows that he deliberately ignored the orders of the referee in bankruptcy, and filed a statement, if not technically a report, which in part was deliberately false.

Whether the respondent has also committed the crimes of perjury and subornation of perjury it is not necessary here to determine. That is a matter for the district attorney.

The respondent should be disbarred.

McAvoy, Martin, O'Malley and Townley, JJ., concur.

Respondent disbarred.